**Anthony BROWN, Plaintiff,**

v.

**M. BUSCH and G. Kania, Defendants.**

**No. 94–CV–472S(H).**

United States District Court,
W.D. New York.

Jan. 21, 1997.

590

Anthony Brown, pro se.

**ORDER**

SKRETNY, District Judge.

Whereas this Court, by its Order dated June 30, 1995, referred the above-captioned case to Magistrate Judge Heckman pursuant to 28 U.S.C. § 636(b)(1)(A) and (B); and

Whereas Defendants, through counsel, made a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56; and

Whereas Magistrate Judge Heckman filed a Report and Recommendation on November 20, 1996, copies of which were mailed to the Plaintiff and counsel for the Defendants by the Clerk of the Court on November 21, 1996, recommending that the Defendants' motion for summary judgment be granted; and

Whereas, by letter dated November 26, 1996, Plaintiff requested an extension of his time to file and serve any objections to the November 20, 1996 Report and Recommendation; and

Whereas, on December 9, 1996, this Court granted Plaintiff's request for an extension of the time to file and serve any objections to the November 20, 1996 Report and Recommendation to January 13, 1997; and

Whereas no objections to the Report and Recommendation were received from the Plaintiff by January 13, 1997; and

Whereas, after careful review of the Report and Recommendation, as well as the pleadings and materials submitted by the parties,

IT HEREBY IS ORDERED, that this Court accepts the Magistrate Judge's Report and Recommendation in its entirety, including the authorities cited and the reasons given therein, and that Defendants' motion for summary judgment is GRANTED.

FURTHER, that the Clerk of the Court is directed to enter final judgment in favor of Defendants Busch and Kania and against the Plaintiff.

SO ORDERED.

### ORDER AND REPORT AND RECOMMENDATION

Filed Nov. 20, 1996

HECKMAN, United States Magistrate Judge.

This matter was referred to the undersigned by the Hon. William M. Skretny, to hear and report, in accordance with 28 U.S.C. § 636(b). Defendants move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff opposes this motion (Item 17), and has moved for assignment of counsel (Item 18). For the following reasons, it is recommended that defendants' summary judgment motion be granted. Plaintiff's motion for assignment of counsel is denied.

### *BACKGROUND*

The complaint in this action was filed by plaintiff *pro se* under 42 U.S.C. § 1983. Plaintiff alleges that on April 23, 1994, he was confined in the Special Housing Unit ("SHU") at the Attica Correctional Facility maintained by the New York State Depart-

ment of Correctional Services ("NYSDOCS"). He alleges that on that date Corrections Officers M. Busch and G. Kania came to plaintiff's cell to escort him to the shower. As required by SHU regulations,[1] upon removing plaintiff from his cell, the officers conducted a "pat frisk" prior to escorting plaintiff to the shower.

During the pat frisk, plaintiff asked a question of another inmate in a neighboring cell. According to the complaint, Officer Busch told plaintiff to "shut the fuck up." Plaintiff asked Busch what the problem was. Busch stated, "Just keep your fucking mouth closed because I don't want to hear your shit." Plaintiff then asked Busch if there was a rule against speaking, and requested to see the sergeant in charge of the unit upon his return from the shower. Busch stated, "You're not getting your shower." Plaintiff alleges that Officers Busch and Kania then forced him into his cell by pushing, shoving and hitting him in his lower back (*see* Item 1).

On April 23, 1994, Officer Busch filed an inmate misbehavior report against plaintiff, describing the incident as follows:

On the above date and time [approximately 4:55 p.m.] I ... was pat frisking [plaintiff]. [Plaintiff] started to mouth off during the frisk. I stopped the pat frisk and ordered [plaintiff] to remain quiet during the pat frisk. [Plaintiff] refused to comply and became loud and boisterous saying something about his freedom of speech. I gave [plaintiff] another order to shut his mouth during the pat frisk and he refused to comply.

I gave [plaintiff] a direct order to step in his cell, he refused to comply, and said "I'm taking my shower."

I had my right hand grabbing the middle of his waist-band and my left hand

---

1. Section 305.1 of the New York Prison Regulations provides:

    In accordance with the provisions of directives concerning "Control of and Search for Contraband," the following procedures will be followed in ... designated special housing units.

    \*     \*     \*     \*     \*     \*

    (b) Pat frisk. An inmate will be pat-frisked whenever he goes out of or returns to the

SHU; and/or prior to and upon returning from any exercise periods, hearings, interviews, etc. 7 N.Y.C.R.R. § 305.1.

(open palm) on his left side of his back and guided him into his cell and he resisted. Officer G. Kania and myself pushed [plaintiff] into his cell and closed his door. Officer G. Kania and myself walked off the gallery without incident.

(Item 17, Ex. A). Busch charged plaintiff with refusing a direct order in violation of inmate disciplinary Rule 106.10,[2] and refusal to comply with frisk procedures in violation of disciplinary Rule 115.10 [3] (*id.*). The misbehavior report was also signed by Officer Kania (*id.*). Both Busch and Kania filed "Use of Force" reports containing descriptions of the incident consistent with the description in the misbehavior report (*see* Item 14, Exs. A & B).

Also on April 23, 1994, Busch filed a second misbehavior report against plaintiff charging that at approximately 5:00 p.m. on that day (about five minutes after the incident described above), as Busch and Kania passed plaintiff's cell on their way to give another inmate a shower, plaintiff "reached out with his right arm and tried to grab" Busch. According to Busch, plaintiff said, "I'll knock your fucking block off. If I'm going upstairs, I'm going with a reason." Busch and Kania "had to stop the shower program and walk off the gallery" (Item 17, Ex. B). As a result of this second incident, Busch charged plaintiff with violation of in-

mate disciplinary Rules 106.10, 102.10 [4] and 107.10 [5] (*id.*).

On May 3, 1994, a Tier III [6] disciplinary hearing was held on the charges contained in the two misbehavior reports. The hearing officer, Captain J. Conway, dismissed all of the charges against plaintiff, stating that the "video tape fails to support charges filed" (Item 17, Ex. C).

On May 9, 1994, plaintiff filed an inmate grievance complaint against Busch and Kania (Item 14, Ex. D). The grievance was investigated by Sergeant D.J. Elbow, who interviewed plaintiff and Kania, and obtained a written report from Busch. Based on this investigation, Sgt. Elbow concluded as follows:

> [I]t appears [plaintiff] didn't fully cooperate with pat frisk procedures and is attempting to institute some type of legal action based on the fact that the misbehavior report was dismissed. It also appears that regardless of the misbehavior report both C.O.'s Busch and Kania didn't use excessive force and were justified when [plaintiff] refused to return to cell when ordered to do so. [Plaintiff] couldn't be allowed to remain out of his cell once he didn't fully comply with pat frisk and refused several direct orders to return to his cell.

**2.** Rule 106.10 of the Institutional Rules of Conduct, as set forth in the Standards of Inmate Behavior established by the New York State prison regulations, provides:

ALL ORDERS OF FACILITY PERSONNEL WILL BE OBEYED PROMPTLY AND WITHOUT ARGUMENT.

7 N.Y.C.R.R. §' 270.2(B)(7)(I).

**3.** Rule 115.10 provides:

Inmates shall comply with all frisk and search procedures.

7 N.Y.C.R.R. § 270.2(B)(16)(I).

**4.** Rule 102.10 provides:

Inmates shall not, under any circumstances make any threat, spoken, in writing, or by gesture.

7 N.Y.C.R.R. § 270.2(B)(3)(I).

**5.** Rule 107.10 provides:

Inmates shall not physically or verbally obstruct or interfere with an employee at any time.

7 N.Y.C.R.R. § 270.2(B)(8)(I).

**6.** The regulations establish three "Tiers" of disciplinary hearings to determine allegations of rule violations, structured generally by range of punishment, as follows:

(1) Tier I—violation hearing (loss of various privileges for up to 13 days, imposition of work assignments, and/or counsel/reprimand; *see* 7 N.Y.C.R.R. Part 252);

(2) Tier II—disciplinary hearing (counsel/reprimand, loss of privileges and/or confinement for up to 30 days, restitution, and/or imposition of work assignments, plus mandatory surcharge; *see* 7 N.Y.C.R.R. Part 253);

(3) Tier III—superintendent's hearing (counsel/reprimand, loss of privileges and/or confinement "for a specified period ...," restricted diet, restitution, loss of "good time," imposition of work assignments, and/or removal from grievance resolution committee, plus mandatory surcharge; *see* 7 N.Y.C.R.R. Part 254).

7 N.Y.C.R.R. § 270.3(a).

(*Id.,* Ex. E). Sgt. Elbow's conclusions formed the basis for the Deputy Superintendent's denial of plaintiff's grievance (*id.,* Ex. F).

On June 23, 1994, plaintiff filed this action. Plaintiff claims that Busch used "extreme and unnecessary force by pushing, shoving and hitting me in my lower and upper back therefore trying to force me in to my cell" (Item 1, ¶ 14). He also claims that Kania struck him and pushed him back into his cell "with enough unwarranted and unnecessary force to thereby deliberately with malicious intent" cause him to stumble into his cell and fall (*id.,* ¶ 15). Plaintiff claims that as a result of the conduct of Busch and Kania, he suffered bruises, contusions and abrasions on his lower back and aggravation of a previous back injury, as well as "emotional anguish" (*id.,* ¶ 23). He seeks damages in the amount of $375,000.00 for violations of his rights under the first, eighth and fourteenth amendments to the United States Constitution (Item 1).

By order dated November 21, 1994, Judge Skretny granted plaintiff's request to proceed *in forma pauperis,* but dismissed the complaint *sua sponte* against three defendants sued in their supervisory capacity (Item 3). Defendants Busch and Kania now move for summary judgment dismissing the complaint against them on the grounds that plaintiff cannot meet the pleading requirements for either a first amendment or an eighth amendment violation, and that Busch and Kania are entitled to qualified immunity.

## DISCUSSION

### I. Summary Judgment.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In reaching this determination, the court must assess whether there are any material factual issues to be tried while resolving ambiguities and drawing reasonable inferences against the moving party, *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505,

2510–11, 91 L.Ed.2d 202 (1986); *Giano v. Senkowski,* 54 F.3d 1050, 1052 (2d Cir.1995), and must give extra latitude to a *pro se* plaintiff. *McDonald v. Doe,* 650 F.Supp. 858, 861 (S.D.N.Y.1986).

A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc., supra,* 477 U.S. at 248, 106 S.Ct. at 2510; *see Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.), *cert. denied,* 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991). Once the moving party has met its burden of demonstrating the absence of a genuine issue of material fact, the nonmoving party must come forward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely upon a "metaphysical doubt" concerning the facts, or on the basis of conjecture or surmise. *Bryant v. Maffucci, supra* (citing *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986)). However, where the parties have relied solely on assertions made in affidavits or sworn statements to demonstrate the presence or lack of genuine issues of material fact, the nonmoving party "will have his [or her] allegations taken as true, and will receive the benefit of the doubt when his [or her] assertions conflict with those of the movant." *Samuels v. Mockry,* 77 F.3d 34 (2d Cir.1996) (quoting 10 Wright, Miller & Kane, Federal Practice and Procedure § 2716 (1983)); *see also Piesco v. City of New York,* 933 F.2d 1149 (2d Cir.), *cert. denied,* 502 U.S. 921, 112 S.Ct. 331, 116 L.Ed.2d 272 (1991).

### II. Eighth Amendment.

A claim that prison guards subjected an inmate to excessive force is governed by the eighth amendment, which protects prisoners from "cruel and unusual punishment" in the form of "unnecessary and wanton infliction of pain" at the hands of prison officials. *Romano v. Howarth,* 998 F.2d 101, 104 (2d Cir.1993) (citing *Wilson v. Seiter,* 501 U.S. 294, 297, 111 S.Ct. 2321, 2323, 115 L.Ed.2d 271 (1991), and *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976)). The core inquiry for

the court in assessing a prisoner's claim that prison officials used excessive force in violation of the eighth amendment is "whether force was applied in a good-faith effort to maintain or restore prison discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7, 112 S.Ct. 995, 999, 117 L.Ed.2d 156 (1992).

An inmate claiming that prison officials subjected him or her to cruel and unusual punishment by the use of excessive force has the burden of establishing both an objective and a subjective component. *Romano v. Howarth, supra,* 998 F.2d at 105. Objectively, the plaintiff must establish that the deprivation alleged is sufficiently serious or harmful enough to reach constitutional dimensions. *Id.; see also Wilson v. Seiter, supra.* While a *de minimis* use of force will rarely suffice to state a constitutional claim, the plaintiff is not required to show that the application of force resulted in serious injury. *Hudson v. McMillian, supra,* 503 U.S. at 9, 112 S.Ct. at 1000. As explained by the Supreme Court in *Hudson:*

> That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action. *See Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.), [*cert. denied sub nom. John v. Johnson,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973)] ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights"). The Eighth Amendment's prohibition of "cruel and unusual" punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort "repugnant to the conscience of mankind."

*Hudson v. McMillian, supra,* 503 U.S. at 9–10, 112 S.Ct. at 1000 (quoting *Estelle v. Gamble, supra,* 429 U.S. at 106, 97 S.Ct. at 292).

Subjectively, the plaintiff must show that the defendants acted wantonly. More specifically in the context of an eighth amendment "excessive force" claim, the plaintiff must show that the defendants acted "maliciously and sadistically to cause harm...." *Id.* at 7, 112 S.Ct. at 998; *Romano v. Howarth, supra,* 998 F.2d at 105. To

determine whether the defendants acted maliciously, the trier of fact should consider the following factors: the extent of the plaintiff's injuries, the need for the application of force, the correlation between the need for force and the amount of force used, the threat reasonably perceived by the defendants, and any efforts made by the defendants to temper the severity of a forceful response. *Whitley v. Albers,* 475 U.S. 312, 321, 106 S.Ct. 1078, 1085, 89 L.Ed.2d 251 (1986). As stated by the Second Circuit in *Romano v. Howarth:*

> If an evaluation of these factors leads the [trier of fact] to conclude that the defendants acted maliciously, wantonness has been established. And an Eighth Amendment violation has occurred. If, on the other hand, reflection upon these factors leads the [trier of fact] to find that the defendants acted in a good-faith effort to maintain and restore discipline, no constitutional violation has occurred because the subjective component of the claim has not been satisfied.

998 F.2d at 105.

What follows is the court's evaluation of these factors in light of the pleadings, affidavits, memoranda and exhibits presented by the parties on this motion for summary judgment.

### A. The Extent of Plaintiff's Injuries.

The medical records submitted as exhibits to the affidavit in support of defendants' motion show that plaintiff was seen in his cell by a registered nurse approximately 2 hours after the incident on April 23, 1994. Plaintiff reported that his back had gotten twisted. He complained of back pain. The report noted a superficial abrasion measuring ½ inch by 2½ inches on plaintiff's middle-lower back. The nurse gave plaintiff Advil© for his pain, and recommended follow-up during morning sick call (Item 14, Ex. G). Plaintiff's ambulatory health records from April 23, 1994 through March 21, 1995 (*id.,* Ex. I) show that plaintiff had a long history of back problems prior to the April 23, 1994 incident (*see* Item 14, Ex. I, Physician's Assistant Report dated September 22, 1994

(Multiple untreated lower back injuries since 1976)).

## B. The Need for the Application of Force.

In his "Use of Force" report, Officer Busch stated:

> Inmate Brown did not comply with pat-frisk procedures. Inmate Brown refused direct order to return to cell. I then attempted to guide him back into the cell. Inmate Brown resisted. C.O. Kania then had to help me push Inmate Brown back into cell. Cell door was then closed.

(Item 14, Ex. A). This account of the events precipitating the use of force is corroborated by Officer Kania's report (*id.,* Ex. B), and is consistent with reports contained in the Video Monitor Incident Form filled out by the video monitor ("officers placed inmate back into his cell"), the watch commander ("incident handle[d] properly") and the Captain ("[inmate] forced back into his cell before frisk was completed") who viewed the video tape of the incident (*id.,* Ex. C). It is also consistent with Sgt. Elbow's conclusion, upon review of plaintiff's grievance, that "Busch and Kania didn't use excessive force and were justified when [plaintiff] refused to return to cell when ordered to do so" (*id.,* Ex. E).

## C. The Correlation Between the Need for Force and the Amount of Force Used.

In his "Use of Force Report," Officer Busch described the force used as follows:

> I had my right hand grabbed [sic] his pants waist band in the middle. My left hand (open palm) was placed on [plaintiff's] left side of his back. I went to place [plaintiff] in his cell and he resisted. Officer G. Kania and myself pushed [plaintiff] into [his] cell.

(Item 14, Ex. A). Officer Kania reported that he "placed both hands opened palms on the right side of [plaintiff]'s back and pushed him into cell" (*id.,* Ex. B). As discussed above, these reports are consistent with the reports of the three prison employees who monitored the video tape of the incident (*id.,* Ex. C).

## D. The Threat Reasonably Perceived by Defendants.

Plaintiff was housed in the SHU, which is the most rigorously secured unit of a maximum security prison. He was about to be transported out of his cell. The pat frisk is a standardized procedure routinely employed in New York State correctional facilities "for the inspection of an inmate's person ... to aid in the control of contraband." NYS-DOCS Directive No. 4910; *see also* 7 N.Y.C.R.R. § 305.1(b). It cannot be seriously disputed by plaintiff that corrections officers have a legitimate penological interest in conducting this procedure without distractions or disruptive behavior that might result from the inmate's attempt to converse with other inmates during the frisk, or with the officers conducting the frisk.

## E. Efforts Made to Temper the Severity of a Forceful Response.

The record indicates that defendants applied force after plaintiff refused their orders to return to his cell. Plaintiff claims that he was forced back into his cell without any direct order having been given.

Upon evaluation of these factors in light of the facts and circumstances of the incident as contained in the pleadings and exhibits before the court, I find that no reasonable jury could return a verdict in favor of plaintiff on his eighth amendment excessive force claim. With respect to the objective element of the claim, the record shows that the deprivation alleged by plaintiff does not "reach constitutional dimensions." *Romano v. Howarth, supra,* 998 F.2d at 105. This conclusion is supported by the medical records, which show that approximately 2 hours after the incident occurred, plaintiff had a small superficial abrasion on his back. He alleges that this injury aggravated his chronic back condition. However, while recovery for aggravation of a pre-existing condition is not precluded in such a case, recovery remains available only for injuries caused by the use of *excessive* force. *See, e.g., Dunn v. Denk,* 79 F.3d 401, 403 (5th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 61, —— L.Ed.2d —— (1996).

Therefore, even assuming that the force applied by defendants caused an aggravation of plaintiff's back problems and resulted in significant pain, the inquiry remains focused on the amount of force used, which in this case was clearly *de minimis*. *See, e.g., Norman v. Taylor*, 25 F.3d 1259, 1262–64 (4th Cir.1994), *cert. denied*, 513 U.S. 1114, 115 S.Ct. 909, 130 L.Ed.2d 791 (1995) (keys swung at inmate's face which struck his thumb was *de minimis* force); *Gavin v. Ammons*, 21 F.3d 430 (7th Cir.1994) (table; text in Westlaw at 1994 WL 117983) (guard's pulling of inmate's hair was *de minimis* force); *Calabria v. Dubois*, 23 F.3d 394 (1st Cir.1994) (table; text in Westlaw at 1994 WL 209938) (radio belt thrown at face of inmate causing blood to appear was *de minimis* force); *White v. Holmes*, 21 F.3d 277, 280–81 (8th Cir.1994) (keys swung at inmate which slashed his ear was *de minimis* force); *Jackson v. Pitcher*, 966 F.2d 1452 (6th Cir.) (table; text in Westlaw at 1992 WL 133041), *cert. denied*, 506 U.S. 1024, 113 S.Ct. 665, 121 L.Ed.2d 590 (1992) (guard's stomp on the hand of inmate was *de minimis* force); *Black Spotted Horse v. Else*, 767 F.2d 516, 517 (8th Cir.1985) (corrections officer's pushing a cubicle wall so as to strike plaintiff's legs, brusque order of the inmate out of his cell and poking inmate in the back was *de minimis* force); *see also Roberts v. Samardvich*, 909 F.Supp. 594 (N.D.Ind.1995) (grabbing inmate, pushing him up the stairs toward his cell, and placing him in cell cuffed, shackled, and secured to the door was *de minimis* force under the circumstances); *McMiller v. Wolf*, 1995 WL 529620 (W.D.N.Y. August 28, 1995) (snatching inmate's mirror, breaking it against cell bars and thereby lacerating inmate's finger was *de minimis* force); *Crow v. Leach*, 1995 WL 456357 (N.D.Cal. July 28, 1995) (corrections officer's pushing inmate into chair causing his shoulder to break window behind him was *de minimis* force); *Lyell v. Schachle*, 1995 WL 870803 (M.D.Tenn. April 3, 1995) (corrections officer's pushing inmate against cell wall causing inmate to strike head was *de minimis* force); *Jackson v. Hurley*, 1993 WL 515688 (N.D.Cal. Nov. 23, 1993) (blow to back of neck with forearm and kick to the ankle of inmate were *de minimis* force); *DeArmas v. Jaycox*, 1993 WL 37501 (S.D.N.Y. Feb. 8, 1993), *aff'd*, 14 F.3d 591 (2d Cir.1993) (corrections officer's punching inmate in arm and kicking inmate in leg was *de minimis* force); *Olson v. Coleman*, 804 F.Supp. 148, 150 (D.Kan.1992) (single blow to head of handcuffed inmate was *de minimis* force); *Candelaria v. Coughlin*, 787 F.Supp. 368, 374–75 (S.D.N.Y.1992) (fist pushed against neck of inmate causing him to lose his breath was *de minimis* force); *Neal v. Miller*, 778 F.Supp. 378, 384 (W.D.Mich.1991) (backhand blow with fist to the groin of inmate was *de minimis* force); *Ramos v. Hicks*, 1988 WL 80176 (S.D.N.Y. July 25, 1988) ("bent wrist comealong hold" or single punch not unreasonable or excessive where inmate ignored repeated order, became agitated, and attempted to damage state property); *Anderson v. Sullivan*, 702 F.Supp. 424, 426 (S.D.N.Y.1988) (corrections officer's pulling inmate's arms behind back, lifting them up and forcing inmate's face into cell bars was *de minimis* force).

Plaintiff claims that there is a disputed issue of material fact with respect to the reasonableness of the force used by defendants under the circumstances, as evidenced by the hearing officer's dismissal of the disciplinary charges against him. As discussed above, the disciplinary hearing was based on two separate misbehavior reports filed by Officer Busch on April 23, 1994 charging plaintiff with refusing to obey a direct order, refusing to comply with frisk procedures, interference with an employee, and threats (Item 17, Exs. A & B). The charges were dismissed by the hearing officer, who stated in his report that the "video tape fail[ed] to support [the] charges filed" (*id.*, Ex. C). The hearing officer made no specific findings with respect to the conduct of defendants, and plaintiff has not produced any evidence to otherwise support his claim that Busch and Kania used excessive force under the circumstances. Thus, while the inference might reasonably be drawn from the hearing officer's dismissal of the disciplinary charges that plaintiff's conduct did not warrant the imposition of a disciplinary penalty, this inference is insufficient to raise a genuine issue of fact precluding summary judgment in fa-

vor of defendants. *See Bryant v. Maffucci, supra,* 923 F.2d at 982.

Even if plaintiff's allegations that Busch and Kania pushed, shoved and struck plaintiff while forcing him back into his cell are taken as true for the purpose of this motion, and even if the court should find these allegations to be supported by the hearing officer's determination, when these allegations are considered in light of the medical evidence, the institutional circumstances of plaintiff's SHU confinement, and the holdings in the cases cited above, I find no basis for a reasonable jury to determine that the force used by defendants was more than *de minimis,* or was "of a sort 'repugnant to the conscience of mankind.' " *Hudson v. McMillian, supra,* 503 U.S. at 10, 112 S.Ct. at 1000.

With respect to the subjective element, the court's review of the *Romano* factors shows that the force was applied by defendants "in a good-faith effort to maintain or restore discipline," and not "maliciously and sadistically to cause harm." *Hudson v. McMillian, supra,* 503 U.S. at 7, 112 S.Ct. at 999. It is undisputed that the application of force by defendants was in response to plaintiff's refusal of Busch's order to remain silent during the routine SHU pat-frisk. It is also undisputed that Busch and Kania had a legitimate penological interest in conducting the pat-frisk procedure without distractions or disruptive behavior. Thus, even if plaintiff has satisfied the objective component for his claim, the undisputed facts before the court, and any disputed facts viewed in the light most favorable to the plaintiff, cannot be reasonably construed as demonstrating wantonness on the part of defendants.

For these reasons, plaintiff's allegations do not rise to the level necessary to maintain an excessive force claim against these defendants. Summary judgment is therefore appropriate dismissing plaintiff's eighth amendment claim.

### III. Freedom of Speech.

■ Plaintiff also alleges that by forcing him back into his cell for attempting to talk to another inmate, defendants violated plaintiff's first amendment right to freedom of speech. As repeatedly recognized by the Supreme Court, "[t]he fact of confinement and the needs of the penal institution impose limitations on constitutional rights, including those derived from the First Amendment, which are implicit in incarceration." *Jones v. North Carolina Prisoners' Labor Union, Inc.,* 433 U.S. 119, 125, 97 S.Ct. 2532, 2537–38, 53 L.Ed.2d 629 (1977). As noted by the Court in *Pell v. Procunier,* 417 U.S. 817, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974):

> [A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system. Thus, challenges to prison restrictions that are asserted to inhibit First Amendment interests must be analyzed in terms of the legitimate policies and goals of the corrections system, to whose custody and care the prisoner has been committed in accordance with due process of law.

*Id.* at 822, 94 S.Ct. at 2804. Indeed, as stated in *Jones:*

> Perhaps the most obvious of the First Amendment rights that are necessarily curtailed by confinement are those associational rights that the First Amendment protects outside of prison walls. The concept of incarceration itself entails a restriction on the freedom of inmates to associate with those outside of the penal institution. Equally as obvious, the inmate's "status as a prisoner" and the operational realities of a prison dictate restrictions on the associational rights among inmates.

*Jones, supra,* 433 U.S. at 125–26, 97 S.Ct. at 2538.

■ In order to establish that his first amendment rights were violated, therefore, plaintiff must show that the restriction of his right to communicate with other inmates was not "reasonably related to legitimate penological interests." *Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 2261–62, 96 L.Ed.2d 64 (1987); *Thornburgh v. Abbott,* 490 U.S. 401, 409, 109 S.Ct. 1874, 1879, 104 L.Ed.2d 459 (1989); *see also Purnell v. Lord,* 952 F.2d 679, 682 (1992); *Fromer v. Scully,* 874 F.2d 69, 72 (2d Cir.1989); *Young v. Coughlin,* 866 F.2d 567, 570 (2d Cir.); *cert. denied,* 492 U.S. 909, 109 S.Ct. 3224, 106 L.Ed.2d 573 (1989).

As discussed above, defendants have articulated a legitimate penological interest in maintaining the ability to conduct a pat frisk of an SHU inmate without distractions caused by the inmate's attempts to simultaneously carry on a conversation with another inmate or to ask questions of the officers conducting the frisk.

Accordingly, the record before the court on this motion establishes that no reasonable jury could find in favor of plaintiff on his first amendment claim. Summary judgment in favor of defendants is therefore appropriate on this claim as well.

### IV. Qualified Immunity.

■ Defendants also move for summary judgment on the ground of qualified immunity. State officials performing discretionary functions in the course of their duties are immune from suits alleging constitutional violations "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982) (quoted in *Russell v. Coughlin,* 910 F.2d 75, 78 (2d Cir.1990)). Even when such rights are clearly established, qualified immunity will protect a government official "if it was objectively reasonable for [the official] to believe that his acts did not violate those rights." *Robison v. Via,* 821 F.2d 913, 921 (2d Cir.1987); *Russell, supra,* 910 F.2d at 78; *Gittens v. LeFevre,* 891 F.2d 38, 42 (2d Cir.1989). "The objective reasonableness test is met—and the defendant is entitled to immunity—if 'officers of reasonable competence could disagree' on the legality of the defendant's actions." *Lennon v. Miller,* 66 F.3d 416, 420 (2d Cir.1995) (quoting *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986)).

■ Thus, a defendant is entitled to summary judgment on qualified immunity grounds where the court determines as a matter of law that it was objectively unreasonable for the defendant to believe that his or her conduct or actions did not violate an established federally protected right. *Lennon, supra,* 66 F.3d at 420. "In other words, if any reasonable trier of fact could find that the defendants' actions were objectively un-

reasonable, then the defendants are not entitled to summary judgment." *Id.*

■ The record in this case establishes that, at the time of the incident, defendants Busch and Kania were following routine pat-frisk procedures for transporting an inmate to a service within the SHU. As evidenced by the allegations in the complaint, it is undisputed that plaintiff continued to speak during the pat-frisk after Busch ordered him to remain silent. Defendants used *de minimis* force to place plaintiff back in his cell, and there is no showing of wantonness. It was therefore objectively reasonable for defendants to believe that their conduct under the circumstances did not violate plaintiff's constitutional right to be free from the use of excessive force, or his right to freedom of speech.

Accordingly, I find that defendants are entitled to summary judgment on qualified immunity grounds.

### V. Assignment of Counsel.

Finally, plaintiff has applied to the court for assignment of counsel. Pursuant to 28 U.S.C. § 1915(d), the court may appoint counsel to assist indigent litigants. *Sears, Roebuck & Co. v. Charles W. Sears Real Estate, Inc.,* 865 F.2d 22, 23 (2d Cir.1988).

■ It is clear that assignment of counsel in this matter is in the judge's discretion. *See In Re Martin–Trigona,* 737 F.2d 1254 (2d Cir.1984). The factors to be considered in deciding whether or not to assign counsel are set forth by the Second Circuit in *Hodge v. Police Officers,* 802 F.2d 58 (2d Cir.1986). However, the court should exercise its discretion to appoint counsel only in cases where the plaintiff has made "a threshold showing of some likelihood of merit." *Cooper v. Sargenti Co.,* 877 F.2d 170, 174 (2d Cir.1989).

■ As indicated by the discussion above, plaintiff has failed to make that showing in this case. Accordingly, his motion for assignment of counsel is denied.

### CONCLUSION

For the foregoing reasons, it is recommended that defendants' motion for summary judgment (**Item 14**) be GRANTED. Plaintiff's motion for assignment of counsel (**Item 18**) is DENIED.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED,** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed.R.Civ.P. 72(b) and Local Rule 72.3(a)(3).

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not presented to the magistrate judge in the first instance. *See, e.g., Paterson–Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.,* 840 F.2d 985 (1st Cir.1988).

*Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order. Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Wesolek, et al. v. Canadair Ltd., et al.,* 838 F.2d 55 (2d Cir.1988).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." *Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Decision and Order), may* result in the District Court's refusal to consider the objection.

**SO ORDERED.**