Steve **HUSBANDS**, Plaintiff,

v.

Robert J. **McCLELLAN**, Superintendent of Southport Correctional Facility; B. Lilac, Correctional Officer at Attica Correctional Facility; Thomas A. Coughlin, III, Commissioner of Department of Correctional Services for the State of New York; J. Woodward, Hearing Officer at Southport Correctional Facility, Defendants.

No. 93–CV–6025L.

United States District Court, W.D. New York.

March 26, 1997.

Husbands claims that defendants violated his due process rights under the Fourteenth Amendment to the United States Constitution. In essence, Husbands alleges that he was not afforded certain procedural protections in the course of a Tier III hearing held concerning a misbehavior report that had been lodged against him by a corrections officer at Southport. Husbands also claims that the misbehavior report issued against him was false and was intended to cover-up an assault on Husbands by corrections officers and to prevent Husbands from seeking redress for the alleged assault. For the reasons discussed, *infra*, plaintiff's motion to amend his complaint is denied, defendants' motion for summary judgment is granted and the complaint is dismissed.

### FACTS

Husbands' complaint stems from a misbehavior report, filed against him on June 1, 1991, by defendant corrections officer Blaine I. Lilac, III ("Lilac"). The misbehavior report charged Husbands with possession of contraband, that is a metal shank which was found under a locker in Husband's cell. A Tier III disciplinary hearing on the charge was held on June 7, 1991 before defendant hearing officer Larry Woodward ("Woodward"). Woodward found Husbands guilty of the charge and sentenced him to one year in the special housing unit ("SHU") with a loss of privileges and a one year loss of good time credits.

Husbands appealed the hearing disposition to defendant Thomas A. Coughlin III ("Coughlin"), Commissioner of Department of Corrections for the State of New York. The appeal was heard on August 29, 1991 by Donald Selsky, the Director of Special Housing and Inmate Disciplinary Programs (Selsky is not a named defendant), who reduced Husbands' sentence to six months in SHU and twelve months loss of good time credit.

On December 12, 1991, Husbands filed an Article 78 proceeding in state court, which was dismissed as moot after Commissioner

Steve Husbands, Copiague, NY, pro se.

Warren S. Landau, Smithtown, NY, for Steve Husbands.

Carlos Rodriguez, Office of NY State Atty. Gen., Rochester, NY, for Robert J. McClellan, B. Lilac, C.O., Thomas A. Coughlin, III, J. Woodward.

### DECISION AND ORDER.

LARIMER, Chief Judge.

### BACKGROUND

This is a civil rights action filed on January 21, 1993 pursuant to 42 U.S.C. § 1983 by Steve Husbands ("Husbands"), a prisoner who at all times relevant was incarcerated at the Southport Correctional Facility ("Southport"). Husbands filed his original complaint *pro se* but is now represented by counsel. Pending before the Court are defendants' motion for summary judgment and plaintiff's motion to amend the complaint.[1]

1. Defendants filed their summary judgment on July 19, 1995. The Court issued an order on April 22, 1996, allowing plaintiff to file a motion to amend the complaint, with explicit instruc-

tions to discuss why the statute of limitations would not bar any new claims. Plaintiff filed the motion to amend on May 23, 1996.

Coughlin administratively reversed the results of Husband's Tier III hearing and expunged Husband's record.

In his original complaint, Husbands claimed that he was denied a fair and impartial hearing because hearing officer Woodward (1) failed to adjourn the hearing in order for Husbands to obtain a new inmate assistant and (2) did not call the writer of the misbehavior report to testify.

In his motion to amend, Husbands seeks to amend his complaint primarily to clarify the basis of the claim and the theories upon which he asserts liability. Basically, Husbands seeks to add facts relating to a riot that occurred at Southport while Husbands was incarcerated there. According to Husbands, after the riot, Lilac (and other corrections officers) removed him from his cell and physically assaulted him. Husbands claims that, in order to prevent him from seeking redress for the assault, Husbands was falsely charged with possession of an unauthorized weapon. Although he states in the factual portion of the proposed amended complaint that his beating was cruel and unusual punishment in violation of the Eighth Amendment, Husbands specifically asserts that he is not seeking to bring an independent claim on that basis. Rather, he seeks to add the allegations concerning Lilac's assault on him to demonstrate the factual circumstances leading up to the false misbehavior report.

## DISCUSSION

### I. Plaintiff's motion to amend

Husbands moves to amend his complaint to add a First Amendment claim that defendant Lilac filed a false misbehavior report against him to cover up an assault on Husbands and to prevent him from filing a grievance against the corrections officers who allegedly perpetrated the assault.

Because the three year statute of limitations for § 1983 actions has expired, Husbands' would be allowed to amend his complaint only if the amended complaint "relates back" to the claims in his original complaint.

Rule 15(c) of the Federal Rules of Civil Procedure provides:

An amendment of a pleading relates back to the original pleading when ... (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading ...

■ Analysis of whether an amended complaint relates back to the original complaint must be considered in the context of the liberal relation back policy expressed in Fed. R.Civ.P. 15(c) as well as the rule that *pro se* complaints must be liberally construed. *Villante v. Dept. of Corrections of City of New York*, 786 F.2d 516, 520 (2d Cir.1986); See also *Massop v. Coughlin*, 770 F.2d 299, 301 (2d Cir.1985)(per curiam).

In the present case, however, I need not decide whether the proposed amended complaint relates back to the original complaint. Even assuming that it does relate back, I will deny the motion to amend based on the futility of the proposed amendment. See *John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp.*, 22 F.3d 458, 462 (2d Cir.1994)("Undue delay and futility of the amendment, among other factors, are reasons to deny leave."). See also *Nerney v. Valente & Sons Repair Shop*, 66 F.3d 25, 28–29 (2d Cir.1995).

Husbands seeks to amend his complaint to assert that his substantive rights under the First Amendment were violated because the disciplinary ticket issued by Lilac was false and given in order to prevent Husbands from petitioning the government for redress concerning the assault.

■ Initially, any contention by Husbands that the allegedly false misbehavior report in and of itself violated his constitutional rights must fail. It is well settled that "... a prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest." *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir.1986). Rather, an inmate has the right not to be deprived of a protected liberty interest without due process of law (emphasis added). *Id.* As was the case in *Freeman*, Husbands was granted a hearing and was afforded the opportunity to rebut the charges

against him. Moreover, as discussed more fully below, Husbands was not deprived of any protected liberty interest. In light of *Sandin v. Conner,* —— U.S. ——, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the punishment Husbands received did not implicate a liberty interest protected by the Fourteenth Amendment.

■ If a false disciplinary ticket is issued against an inmate in retaliation for the inmate's exercise of rights protected under the First Amendment, a claim under § 1983 may exist. To establish a claim for retaliation under § 1983, Husbands must initially show that he engaged in conduct that was protected by the First Amendment and that defendants' conduct was motivated by or substantially caused by an exercise of his First Amendment rights. *Gagliardi v. Village of Pawling,* 18 F.3d 188, 194 (2d Cir.1994). Husbands fails on both counts.

■ In the present case, Husbands has not claimed that he engaged in any protected First Amendment activity for which he was retaliated against by being issued the false disciplinary ticket. Rather, according to Husbands, he was issued the false disciplinary ticket so as to inhibit and prevent him from exercising his right in the future to seek redress for the assault. This claim must fail. The flaw in Husbands' argument is that he has completely failed to allege or show how the false disciplinary ticket **prevented** him from pursuing his First Amendment rights to seek redress from the government. Husbands has provided this Court with nothing to substantiate his claim that he was in any way prevented from pursuing redress for the alleged assault. He was not prevented from complaining to DOC officials. In fact, it appears from the record that Husbands did have a conversation with McClellan regarding Lilac's behavior. In response to the conversation, McClellan sent a memorandum to Husbands, dated August 22, 1991 advising that Husbands' complaint had been turned over to the Inspector General's Office for investigation. Furthermore, there is certainly no indication that Husbands was prevented from filing an action in federal court under § 1983 for the alleged assault.

Very simply, Husbands has not sufficiently alleged either that he engaged in any First Amendment activity for which he was subjected to retaliation or that he was in any way prevented from engaging in First Amendment activity.

Thus, even if Husbands is allowed to amend his complaint, his claim that Lilac issued him a false disciplinary ticket to prevent him from seeking redress for an earlier assault, in violation of the First Amendment, would be dismissed.

## II. Defendants' Motion for Summary Judgment

### A. *Summary Judgment Standards*

Summary judgment shall be granted if the pleadings and supplemental evidentiary materials "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). No genuine issue of material fact exists if "the record as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

To defeat summary judgment, the non-moving party must go beyond the pleadings and designate "specific facts showing that there is genuine issue for trial." Fed. R.Civ.P. 56(c). An argument that there are material factual issues which preclude a grant of summary judgment must be supported by concrete particulars. *Dressler v. MV Sandpiper,* 331 F.2d 130, 133 (2d Cir. 1964). Mere denials or general allegations without evidentiary support will not defeat a summary judgment motion. *Engl v. Aetna Life Ins. Co.,* 139 F.2d 469, 473 (2d Cir.1943).

### B. *Fourteenth Amendment Due Process Claim*

■ Husbands claims that his Fourteenth Amendment due process rights were violated during the course of his Tier III disciplinary hearing. In particular, Husbands alleges that his inmate assistant was ineffective and that Woodward, the hearing officer, failed to adjourn the hearing in order to appoint an

effective assistant, failed to direct that the documentary evidence requested by Husbands be produced, and failed to require proof concerning Husbands' ability to have obtained and possessed the weapon. As a result of these procedural violations, Husbands claims, in his amended complaint, that he was "improperly and unlawfully subjected to confinement to SHU for six (6) months … [and] was improperly subjected to loss of privileges for twelve (12) months."[2]

■ To prevail in a § 1983 claim a prison inmate must demonstrate that he possessed a liberty or property interest protected by the United States Constitution or federal statutes and that, without due process, he was deprived of that interest. *See Green v. Bauvi,* 46 F.3d 189, 194 (2d Cir. 1995). A liberty interest may be implicated in appropriate circumstances by either a federal or state statute or by the United States Constitution itself. *See Lee v. Coughlin,* 902 F.Supp. 424, 430 (S.D.N.Y. 1995) ("liberty interests protected by the Due Process clause may arise from either the Due Process clause itself or from the laws of the states") citing *Sandin,* — U.S. at ——, 115 S.Ct. at 2300.

In *Sandin,* the United States Supreme Court expressly determined that neither Hawaii state regulations nor the Due Process clause created a liberty interest for a prisoner in avoiding thirty days' disciplinary confinement in SHU. The Court found that state regulations can create a liberty interest only where a restraint imposes "atypical and significant hardship on an inmate in relation to the ordinary incidents of prison life." *Sandin, supra* at ——, 115 S.Ct. at 2300. The prisoner's segregated confinement, according to the Court, did not present the type of

atypical, significant deprivation in which a state might create such a liberty interest.

In the opinion's final paragraph, the Supreme Court concluded that "neither the Hawaii prison regulation in question, nor the Due Process clause itself, afforded [the plaintiff] a protected liberty interest that would entitle him to the procedural protections set forth in *Wolff*[3]." *Sandin, supra* at ——, 115 S.Ct. at 2301.

■ The present case is indistinguishable from *Sandin.* "Under New York prison regulations, inmates can be placed in SHU for disciplinary confinement, detention, administrative segregation, protective custody, keeplock confinement, and 'for any other reason, with the approval of the deputy commissioner for facility operations.'" *Carter v. Carriero,* 905 F.Supp. 99, 103 (W.D.N.Y.1995), citing 7 N.Y.C.R.R. § 301.1–.7. Like the prisoner in *Sandin,* Husbands was not subjected to punishment that imposed "atypical and significant hardship" in relation to the ordinary incidents of prison life. Therefore, Husbands' punishment did not implicate a liberty interest under the Fourteenth Amendment and his claim must be dismissed. *See also Lee,* 902 F.Supp. at 430 (No liberty interest implicated by the Due Process clause in prison context unless confinement is "qualitatively different" from typical punishment and has "stigmatizing consequences"); *Uzzell v. Scully,* 893 F.Supp. 259 (S.D.N.Y.1995) (no liberty interest in avoiding keeplock confinement because it is not atypical and significant).

■ Furthermore, the length of the confinement is not dispositive of whether a liberty interest is implicated, since under New York's prison regulations inmates may be

---

**2.** Although he does not seem to be pursuing it, Husbands' complaint also contains an Eighth Amendment claim relating to the punishment imposed upon him after he was found guilty of the disciplinary rule violation. I find that the punishment imposed upon Husbands was not cruel and unusual under contemporary standards and, thus, was not unconstitutional. See *Rhodes v. Chapman,* 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981). Furthermore, Husbands' does not seem to be complaining of the *nature* of the punishment he received. Rather, he complains that the punishment was cruel

and unusual because he was innocent of the charge. "In general, 'allegations that procedural irregularities occurred during [an inmate's] disciplinary proceeding do not involve the Eighth Amendment's protection against the unnecessary and wanton infliction of pain.'" *Ricker v. Leapley,* 25 F.3d 1406, 1411 (8th Cir.1994), quoting *Brown v. Smith,* 828 F.2d 1493, 1494–95 (10th Cir.1987).

**3.** *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).

confined in SHU for extended periods for both punitive and non-punitive reasons. *Brooks v. DiFasi*, No. 93–CV–0197E, 1995 WL 780976 *5 (W.D.N.Y. Dec.29, 1995). Thus, numerous cases from this circuit have dismissed due process claims in cases involving penalties comparable to the one imposed in the case at bar. *See, e.g., Guzman v. Kelly*, No. 88–CV–1391(E), 1996 WL 291985 (W.D.N.Y. May 28, 1996)(eight months in SHU); *Rivera v. Coughlin*, No. 92 Civ. 3404(DLC), 1996 WL 22342 (S.D.N.Y. Jan.22, 1996) (89 days in keeplock); *Tulloch v. Coughlin*, No. 91–CV–0211E, 1995 WL 780970 (W.D.N.Y. Dec.22, 1995) (180 days in SHU); *McMiller v. Wolf*, No. 94–CV–0623E, 1995 WL 529620 (W.D.N.Y. Aug.28, 1995) (183 days in SHU); *Carter*, 905 F.Supp. 99 (270 days in SHU). I agree with the reasoning of these cases and find that Husbands' confinement was not an "atypical and significant hardship" so as to give rise to the due process protections to which Husbands' claims he was entitled.

 Finally, on the basis of the record before me, the fact that Husbands' punishment for the disciplinary violation initially included a loss of one year of good time credit is not sufficient to establish a liberty interest. Woodward's guilty finding was eventually administratively reversed by Coughlin on or about September 8, 1992. Husbands' record was expunged and his good time credit restored. There is absolutely no indication or allegation that the temporary loss of good time credit actually resulted in Husbands serving a longer overall sentence of incarceration. Husbands was not harmed by the initial loss of good time credit because the credit was restored before the loss affected his overall sentence. *See Young v. Hoffman*, 970 F.2d 1154 (2d Cir.)(per curiam), *cert. denied*, 510 U.S. 837, 114 S.Ct. 115, 126 L.Ed.2d 80 (1993)(no liberty interest implicated where recommended loss of good time was vacated before prisoner served sentence).

### CONCLUSION

Husbands' motion to amend his complaint, filed May 23, 1996, is DENIED. Defendants' motion for summary judgment, (Dkt. No. 20), is GRANTED. The complaint is dismissed in its entirety.

IT IS SO ORDERED.