Sam JAMES, Plaintiff,

v.

Thomas A. COUGHLIN, III, Individually and in his official capacity as Commissioner, et al., Defendants.

No. 94–CV–6281L.

United States District Court, W.D. New York.

June 11, 1998.

Sam James, Alden, NY, pro se.

Carlos Rodriguez, Office of New York State Attorney General, Rochester, NY, for Defendants.

## DECISION AND ORDER

LARIMER, Chief Judge.

### BACKGROUND

Plaintiff Sam James, appearing *pro se*, commenced this action under 42 U.S.C. § 1983. Plaintiff, who is currently an inmate at Clinton Correctional Facility, alleges that while he was housed at Attica Correctional Facility ("Attica"), the defendants violated his First, Eighth, and Fourteenth Amendment rights by subjecting him to sexual abuse and excessive force during a pat frisk, depriving him of a shower (without due process of law), denying him medical treatment for injuries suffered during the pat frisk, and later issuing a false misbehavior report against him.

The defendants, and the positions they held at all relevant times, are: New York State Department of Corrections ("DOCS") Commissioner Thomas A. Coughlin, Attica Superintendent Walter R. Kelly, and Attica Correctional Officers Dennis J. Elbow, Mark Busch, M.V. Kozlowski, and David Morris, all of whom plaintiff sues in their official and individual capacities. Defendants have

moved for summary judgment[1]. For the reasons discussed *infra*, defendants' motion for summary judgment is granted, and the complaint is dismissed.

### FACTUAL ALLEGATIONS

Plaintiff claims that on April 21, 1994, he was housed at Attica in the Special Housing Unit ("SHU"). Defendants M. Busch and M. Kozlowski approached plaintiff's cell to escort him to the shower area. In accordance with SHU regulations (7 NYCRR § 305.1(b)), these defendants prepared to conduct a "pat frisk" of plaintiff. Plaintiff handed his towel and wash rag to defendants Busch and Kozlowski, and then turned his back to the cell door. He claims that the cell door opened, and that he obeyed defendant Busch's order to step out and place his hands above the cell for the frisk.

Plaintiff then claims that defendant Busch reached his right hand into the back of plaintiff's pants, grasping the material and pulling it above waist level so that the pants were wedged high into the back of plaintiff's crotch. Plaintiff asked defendant Busch to remove his hand and stop from conducting the frisk in this inappropriate fashion. Defendant Busch allegedly ignored plaintiff's request and positioned himself so that his genital area was pushing against plaintiff's buttocks while he frisked plaintiff's left side.

Plaintiff claims that he again asked defendant Busch to stop and that Busch disregarded his request, while continuing the frisk on plaintiff's right side in the same manner. After plaintiff repeatedly asked Busch to stop conducting the frisk in this manner, Busch allegedly told plaintiff to be quiet, and thrust the palms of his hands into plaintiff's lower back to push plaintiff back into the cell, allegedly causing injury to plaintiff's back.

Plaintiff claims that this push constituted the use of excessive force, in violation of his Eighth Amendment rights, and that Busch's orders silencing him from protesting against the improper pat frisk violated his First Amendment right of expression. Additionally, plaintiff claims that defendant Busch de-nied him access to medical care after the incident, in deliberate indifference to his serious medical needs.

Plaintiff further alleges that defendant Busch deprived him of his shower after pushing him into the cell, and that Busch wrote up a false misbehavior report on that date, charging plaintiff with refusing a direct order. Plaintiff contends that defendant Busch did not issue a deprivation order as required by regulations before depriving plaintiff of a shower, in violation of plaintiff's due process rights.

Additionally, plaintiff claims that defendants Kozlowski and Dennis J. Elbow observed the incident and did nothing to protect plaintiff or otherwise prevent defendant Busch from committing the alleged misconduct. He further alleges that defendants Kozlowski and Elbow knew that defendant Busch issued a false misbehavior report, and that they not only failed to intervene, but in fact, endorsed the false report.

Defendant Busch's inmate misbehavior report, dated April 21, 1994, stated:

> I ...was escorting inmates to the shower with Officer M. Kozlowksi. To pat frisk inmate James ..., I ordered him to back out. I started to pat frisk inmate James and he started to mouth-off. I gave inmate James a direct order to remain quiet during the pat frisk. Inmate James refused to comply and became loud and boisterous. I gave inmate James two more direct orders to be quiet, he refused and replied, "No one tells me to shut my mother-fuckin mouth." I stopped the pat frisk and ordered inmate James to step into his cell. He refused. After three more direct orders to step into his cell, I placed both hands, open palms on his lower back, and guided him into his cell. Inmate James turned to his left and sucker punched me with a closed right fist above my left eye. Inmate James['s] cell door was closed and Officer M. Kozlowski and myself [sic] walked off the West Gallery without further incident.

---

1. Plaintiff was directed to file his response to defendants' motion for summary judgment by April 3, 1998 (docket # 36), but to date, has not filed his response.

(Docket #33, Exh. B). The defendant's Statement of Facts, filed pursuant to Local Rule of Civil Procedure 56, indicates that plaintiff had directed comments to several other inmates during the pat frisk. Defendant Busch charged plaintiff with several violations: rule 100.11 (inflicting bodily harm upon staff), 106.10 (disobeying direct order), and 115.10 (refusing to comply with frisk procedures). Defendants Kozlowski and Elbow signed the report as witnesses. *Id.* A use of force report filed by defendant Busch and also signed by defendants Kozlowski and Elbow states an identical account of the incident. (Docket #33, Exh. A).

Approximately thirty minutes after the incident, Attica nurse B. Cade examined plaintiff, at which time he denied having any injuries or suffering any falls. (Docket #33, Exh. A). Cade thoroughly examined plaintiff's hands and found no swelling or cuts. Her employee accident/injury report, also dated April 21, 1994, states that she examined defendant Busch and that he had moderate swelling and discoloration around his left eyebrow. (Docket #33, Exh. B).

Plaintiff filed an inmate grievance complaint regarding the pat frisk incident and the failure of medical staff to treat his injuries. (Docket 33, Exh. D). Attica Correctional Sergeant Slawatycki investigated the grievance and indicated in a May 3, 1994 memorandum to Acting Deputy Henneburg that plaintiff was receiving medication daily and had recently been examined by a nurse. (Docket #33, Exh. G). Additionally, Slawatycki stated that he had advised plaintiff to see a doctor about the back pain and that plaintiff had refused, claiming that the doctor was a "homo" and that he did not wish to be examined by the doctor. *Id.* On May 4, 1994, Superintendent Charles Brunelle denied plaintiff's grievance, finding no evidence of staff misconduct. (Docket #33, Exh. I).

At an April 27, 1994 Tier III disciplinary hearing, the hearing officer determined that defendant Kozlowski's testimony and the videotaped recording of the incident corroborated defendant Busch's account. (Docket #33, Exh. C, L). Plaintiff was found guilty of violating Rules 100.11 (assault on staff) and 106.10 (refusing direct order); the

charge of refusing a search or frisk was dismissed. (Docket #33, Exh. C). Plaintiff was sentenced to 120 days of SHU confinement and loss of phone privileges, and a recommended 6 month loss of good time credits.

Plaintiff also alleges that on April 22, 1994, the day after the pat frisk incident, defendant Correctional Officer D. Morris was assigned to collect the breakfast trash, and that defendant Morris, while standing in front of plaintiff's cell, told another correctional officer, "That's the asshole [who] assaulted Busch." Plaintiff claims that later that day, when defendant Morris arrived to collect the afternoon meal trash, he disposed of a utensil returned by plaintiff and then issued a misbehavior report, accusing plaintiff of failing to return a spoon. Plaintiff claims that defendant Morris placed him on a three day restricted diet before a disciplinary hearing took place.

Plaintiff filed an inmate grievance complaint about the incident with defendant Morris, claiming that Morris harassed him. In response to the grievance, Superintendent Brunelle determined that Morris, who did not see plaintiff return the spoon, correctly followed the procedures by placing him on temporary restricted diet for failing to return the utensil. (Docket #33, Exh. J). At the disciplinary hearing, a video recording of the incident indicated that plaintiff had complied with the rules and turned in his spoon, and that defendant Morris had thrown the spoon into the garbage. Plaintiff was found not guilty of the charge. He claims that defendant Morris issued the false misbehavior report to retaliate against him for assaulting defendant Busch, and that Morris's actions violated his substantive due process rights.

Finally, plaintiff claims that defendants DOCS Commissioner Thomas A. Coughlin and Attica Superintendent Walter R. Kelly had received complaints from other inmates and plaintiff concerning the "unprofessional and abusive conduct" of defendant Busch and that they failed to investigate the complaints, improperly trained the correctional officers, and mismanaged this employee.

Plaintiff seeks injunctive relief, compensatory damages of $300,000, "declaratory dam-

ages" of $200,000, and punitive damages of $300,000, from each of the defendants.

pat frisk incident. All of these claims must be dismissed.

## DISCUSSION

### A. Summary Judgment Standard

The standards for deciding a summary judgment motion under Fed.R.Civ.P. 56 are well established. Summary judgment shall be granted if the pleadings and supplemental evidentiary materials "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Under the rule, the burden is on the moving party to inform the Court of the basis for the motion and to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has carried that burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Instead, "the non-moving party must come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Id.* at 587, 106 S.Ct. 1348 (quoting Fed.R.Civ.P. 56(e) (alteration in original)). At the summary judgment stage, the Court must draw all reasonable inferences in favor of the nonmovant. *See Murray v. National Broadcasting Co.*, 844 F.2d 988, 992 (2d Cir.), *cert. denied*, 488 U.S. 955, 109 S.Ct. 391, 102 L.Ed.2d 380 (1988).

### B. The Claims against Defendant Busch

Plaintiff alleges, in his complaint, that defendant Busch (1) violated his First Amendment rights by ordering him to be silent when he protested Busch's pat frisk method, (2) violated his Eighth Amendment rights by sexually abusing him during the frisk, using excessive force after the frisk (pushing him from the lower back), and by acting in deliberate indifference to his serious medical needs, (3) issued a false misbehavior report against him, and (4) deprived him of his due process rights under the Fourteenth Amendment by failing to issue a deprivation order before denying plaintiff his shower after the

### 1. First Amendment Claim

Plaintiff claims that defendant Busch violated his right to freedom of speech by ordering him to be silent when he attempted to protest the pat frisk methods Busch had employed. Defendants do not specifically address this claim in their motion for summary judgment. They do contend, in support of their motion, that during the pat frisk, plaintiff's comments were directed not at the correctional officers, but at other inmates, and that plaintiff disrupted the pat frisk procedure by refusing to remain silent. (Docket # 34).

The Supreme Court has held that "[t]he fact of confinement and the needs of the penal institution impose limitations on constitutional rights, including those derived from the First Amendment, which are implicit in incarceration." *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 125, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977). A prisoner's challenge to prison restrictions that he claims inhibit his First Amendment rights must be reviewed in terms of the legitimate goals and policies of the corrections system. *See Pell v. Procunier*, 417 U.S. 817, 822, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974).

Even assuming as true plaintiff's claim that his comments were directed solely to the correctional officers to point out the alleged impropriety of Busch's search methods, I find that plaintiff's claim cannot survive summary judgment without a showing that Busch's curtailment of his protests against the pat frisk method was not "reasonably related to legitimate penological interests." *Turner v. Safely*, 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). This Court has previously held that correctional officers have a legitimate penological interest in conducting pat frisk procedures without distractions or disruptive conduct from inmates. *Brown v. Busch*, 954 F.Supp. 588, 597 (W.D.N.Y.1997) (holding that inmate's right to freedom of speech was not violated when correctional officer silenced his attempts to

ask officer a question *or* talk to other inmates during the frisk). Defendant Busch's disciplinary report and accounts in other documents indicate that he ordered plaintiff to be silent because plaintiff was not complying with pat frisk procedures and had become increasingly loud and boisterous during the ·search. (Docket #31, 34). Plaintiff has not filed any responsive pleading indicating otherwise, and, regardless of plaintiff's reasons for expressing himself (whether to grieve Busch's methods or to associate with other inmates), Busch's curtailment of that right was justified by a legitimate penological interest. *See Brown*, 954 F.Supp. at 597–98. Moreover, plaintiff's dissatisfaction with the pat frisk method could have been (and in fact, was) expressed to officials through the appropriate channels of the inmate grievance procedure, instead of in a manner that disrupted the search, so it cannot be said that he was deprived of a forum in which to grieve misconduct by a correctional officer. Summary judgment in favor of defendants is granted as to this claim.

### 2. Eighth Amendment Claims
#### a. Sexual Abuse

█ Plaintiff claims that defendant Busch sexually abused him during the frisk. The defendants, in support of their motion, have filed affidavits by defendants Busch and Kozlowski, stating that defendant Busch conducted the search appropriately. (Docket # 33, Exhs. 5, 6).

The Second Circuit has recognized that under certain circumstances, the sexual abuse of a prisoner by a correctional officer may violated the prisoner's Eighth Amendment right to be free from cruel and unusual punishment. *Boddie v. Schnieder*, 105 F.3d 857, 860–61 (2d Cir.1997). The Second Circuit applied in *Boddie* a two-pronged standard in its review of a prisoner's sexual abuse claim—a standard that requires (1) a showing that the alleged "punishment" was, in objective terms, "sufficiently serious," and (2) a showing that the prison official had, in subjective terms, a "sufficiently culpable state of mind." *Boddie*, 105 F.3d at 861. A cognizable claim of sexual abuse is shown by allegations that the abuse was objectively

serious enough so as to "violate contemporary standards of decency and ... cause severe physical and psychological harm," and subjectively, could not be justified by any legitimate penological interest. *Id.* The Second Circuit has held, however, that allegations consisting of a small number of isolated incidents, involving a correctional officer's physical touching or pressing against the plaintiff, were insufficient to state a cognizable constitutional claim for sexual abuse. *Id.* (holding that female correctional officer's verbal "passes," coupled by a few incidents where she squeezed plaintiff's hand and penis, ordered his disrobing, or pressed against his body in a sexual manner, did not constitute conduct violative of the Eighth Amendment).

Defendant Busch denies in an affidavit that he placed his genital area on plaintiff during the pat frisk, that he wedged plaintiff's pants into plaintiff's buttocks, or that he conducted the frisk in an otherwise inappropriate manner. (Docket # 31). Even if, however, the Court assumes that the plaintiff's version is true, his allegations do not state a cognizable constitutional claim. While the complained-of conduct by defendant Busch may have been inappropriate and unpleasant to plaintiff, it is nevertheless the sort of *de minimis* activity which does not implicate constitutional concerns. *See Boddie*, 105 F.3d at 861; *Williams v. Kane*, 1997 WL 527677, at *9 (S.D.N.Y. Aug. 25, 1997) (Alleged single incident of sexual abuse during pat frisk, in which plaintiff claimed correctional officer's fondling of inmate's genitals, did not give rise to cognizable Eighth Amendment claim). The sexual abuse claim is hereby dismissed.

#### b. Excessive Force

█ Plaintiff alleges in his complaint that defendant Busch applied excessive force in pushing him back into the cell after the pat frisk. Defendants maintain in their motion for summary judgment that Busch used force minimally and appropriately under the circumstances, in a good faith effort to maintain security and discipline.

The standard for determining whether prison officials have violated the Eighth Amendment by using excessive physical force

was clarified by the Supreme Court in *Hudson v. McMillian,* 503 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). According to *Hudson,* "the core judicial inquiry is ... whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.,* 503 U.S. at 7, 112 S.Ct. 995. To assess an Eighth Amendment claim, the Court must consider both the subjective and the objective components of the alleged violations. *Davidson v. Flynn,* 32 F.3d 27, 29 (1994). The objective component considers the "seriousness of the injury." *Id.* The Eighth Amendment "excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson,* 503 U.S. at 9–10, 112 S.Ct. 995. The subjective component addresses whether the defendant possessed a "wanton" state of mind while engaging in the use of force. *Id.* at 6–7, 112 S.Ct. 995.

When presented with allegations that were remarkably similar to those stated here, this Court previously held that a correctional officer's application of force, by pushing an inmate in his lower back to return him to a cell after he disrupted a pat frisk, did not give rise to a constitutional violation. *Brown v. Busch,* 954 F.Supp. 588, 594–596 (W.D.N.Y. 1997). In that case, this Court considered the following factors: the extent of the inmate's injuries, the need for the application of force, the connection between the need for force and the amount of force used, the threat reasonably perceived by defendants, and the efforts made by defendants to temper the severity of a forceful response, and concluded that the use of force was minimal, and justified by the legitimate penological goal of restoring discipline. *Id.*

The defendants contend that defendant Busch placed his open palms on plaintiff's lower back and guided him back into the cell with "minimal" force, only after plaintiff exhibited and escalated his loud and boisterous behavior, and indicated no intention of cooperating with the pat frisk procedures. (Docket # 33, Exh. 5). They maintain that Busch's use of force was de minimis and employed only to maintain order and security during a routine pat frisk. *Id.*

Having reviewed the pleadings, affidavits, and other documents in this case in light of the aforementioned factors, I conclude that defendant Busch's use of force against plaintiff during the pat frisk was not excessive. First, as to the extent of plaintiff's injuries, he claims to have suffered back and head pain as a result of being pushed in the lower back by defendant Busch, but has produced no documentation of medical problems. Defendants submitted the medical reports filed by Attica nurse B. Cade, who examined plaintiff directly after the incident on April 21, 1994, and documented that plaintiff had no swelling or cuts on his hands and that he denied having injuries or suffering any falls. (Docket # 33, Exh. A). Cade also examined defendant Busch after the incident, and reported that he had moderate swelling and discoloration around his left eyebrow—an injury Busch claims to have resulted from plaintiff punching him. The defendants' filings indicate that for follow up care, plaintiff received medication for back pain, but refused to visit the doctor for further examination. (Docket # 33, Exh. B). Plaintiff, aside from stating allegations in the complaint, has not submitted any evidence in response to the defendants' motion for summary judgment, demonstrating the severity of his injuries, and he does not deny punching Busch.

In terms of the need for force and whether defendant Busch employed a proper amount of force in response to the need, Busch maintains that plaintiff posed a threat by refusing to comply with the order to remain silent during the frisk, and by becoming loud, boisterous, and disorderly, using insolent language toward defendants Busch and Kozlowski. Busch's account is corroborated by his disciplinary report, by defendant Kozlowski's affidavit (Docket # 33, Exh. 6), and by videotaped evidence of the pat frisk incident, as described by Attica First Deputy Superintendent Charles Brunelle, in a June 30, 1994 memorandum to DOCS Assistant Commissioner Israel Rivers. (Docket # 33, Exh. O). Brunelle concluded that the use of force was an appropriate response in this case to the

threat posed by plaintiff, who later struck defendant Busch. *Id.*

Even assuming that plaintiff's allegations are true, and that defendant Busch's push injured plaintiff, causing him to suffer pain, it appears that plaintiff did not suffer a sufficiently serious degree of harm. The amount of force used in this instance was minor, and was applied in reasonable response to restore discipline after plaintiff disrupted a security check. Thus, it cannot be said that defendant Busch's conduct was "repugnant to the conscience of mankind" (objective component) or that it was malicious and with the intent to cause plaintiff harm (subjective component). *Hudson,* 503 U.S. at 10, 112 S.Ct. 995, *Brown,* 954 F.Supp. at 596. Plaintiff's excessive force claim is hereby dismissed.

### c. Denial of Medical Treatment

■ Plaintiff claims that defendant Busch acted with deliberate indifference to his serious medical needs by denying him medical treatment after the pat frisk incident. The documents filed by defendants in support of their motion indicate that Attica nurse Cade examined plaintiff on the date of the incident, at 7:20 p.m., approximately 30 minutes after the incident, that Cade found no superficial cuts or other injuries on him, and that plaintiff denied being injured. (Docket # 33, Exh. B). Defendants also claim that plaintiff was later advised to see a doctor after he complained about back pain, but he refused the examination. Plaintiff has not responded to these contentions.

An allegation that prison officials provided inadequate medical care to an inmate will state a claim of cruel and inhuman punishment of constitutional dimension only where the facts alleged show that a defendant was deliberately indifferent to plaintiff's serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Ross v. Kelly,* 784 F.Supp. 35, 43–44 (W.D.N.Y.), *aff'd,* 970 F.2d 896 (2d Cir.1992), *cert. denied,* 506 U.S. 1040, 113 S.Ct. 828, 121 L.Ed.2d 698 (1992).

Plaintiff's allegations of denial of medical treatment are insufficient to state a constitutional claim. In the first place, plaintiff's complaint does not address the type of seri-

ous medical need which implicates constitutional concern. His allegations, taken as true, indicate that at worst, he suffered injury to his back, but he does not bring forth any allegations or supporting evidence showing that his medical problems resulting from Busch's push were of an serious and urgent nature. Additionally, plaintiff fails to demonstrate with any degree of particularity that defendant Busch was aware of and disregarded his immediate need for medical treatment after the push. The defendants' medical records and the unusual-incident report both indicate he was examined on the date of the incident, within 30 minutes of the occurrence, and plaintiff has not disputed the information in those reports. Plaintiff's vague allegations that the defendant acted with the requisite degree of willful indifference lack any specific description of when he requested medical treatment and whether defendant Busch, with knowledge of a serious medical need, deliberately denied plaintiff access to that treatment. Plaintiff's denial of medical care claim against defendant Busch is hereby dismissed.

### 3. False Misbehavior Report

■ Plaintiff claims that defendant Busch attempted to "cover up" his misconduct after the pat frisk by issuing a false misbehavior report that charged plaintiff, *inter alia,* with refusing to comply with pat frisk procedures.

Even assuming, however, that plaintiff's version of the facts is true, and Busch's charge was falsely concocted, his allegations do not give rise to a per se constitutional violation. Plaintiff has no constitutional immunity from being falsely written up. *Freeman v. Rideout,* 808 F.2d 949 (2d Cir.1986), *cert. denied,* 485 U.S. 982, 108 S.Ct. 1273, 99 L.Ed.2d 484 (1988); *Husbands v. McClellan,* 957 F.Supp. 403 (W.D.N.Y.1997). Rather, "a § 1983 claim may stand when the false charges are allegedly brought in retaliation for an inmate's exercise of his substantive due process rights." *Rodriguez v. Phillips,* 66 F.3d 470, 477 (2d Cir.1995) (quoting *Freeman,* 808 F.2d at 953). Plaintiff has not alleged that defendant Busch issued the allegedly false report in retaliation for plain-

tiff's exercise of a constitutional right, such as grieving Busch's misconduct. Instead, plaintiff merely alleges that Busch issued the false charges to cover up his misconduct. In the absence of highly detailed allegations of retaliatory motive, his substantive due process claim fails to survive summary judgment and is dismissed. *See Gill v. Mooney,* 824 F.2d 192, 194 (2d Cir.1987).

### 4. Deprivation of Procedural Due Process

■ Plaintiff claims that defendant Busch violated his due process rights under the Fourteenth Amendment by failing to issue a deprivation order before denying plaintiff a shower after the pat frisk incident. As a matter of law, however, plaintiff's claim cannot prevail because plaintiff had no liberty interest in retaining his opportunity to take a single shower.

In order to reach the merits of plaintiff's claim that he was denied due process when defendant Busch denied him a shower, the Court must first determine that plaintiff had a liberty interest in remaining free from the penalties imposed upon him. *See Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). In *Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the Supreme Court held that state regulations can create a liberty interest only where a restraint imposes "atypical and significant hardship on an inmate in relation to the ordinary incidents of prison life." *Sandin,* 515 U.S. at 484, 115 S.Ct. 2293, (finding that thirty days in SHU was not atypical or significant). The Court addresses the issue of whether due process was denied only after plaintiff has met the Sandin "atypical and significant hardship" test and has shown that the state regulations give rise to a liberty interest. *Frazier v. Coughlin,* 81 F.3d 313, 317 (2d Cir.1996).

The state regulations governing SHU conditions require that inmates be given access to a minimum of two showers per week. 20 NYCRR § 304.5(a). Additionally, the regulations state that inmates cannot be deprived of personal hygiene services unless a deprivation order issues. 20 NYCRR § 304.1. It appears that defendant Busch did not issue a deprivation order on April 21, 1994, when he denied plaintiff his shower. This omission, however, does not give rise to a constitutional violation.

Plaintiff has made no showing that the deprivation of a single shower constitutes an "atypical and significant hardship." While he claims generally that defendant Busch deprived him of hygienic conditions, he fails to demonstrate that the deprivation of one shower was an atypical hardship. *See Sandin,* 515 U.S. at 484, 115 S.Ct. 2293 ( Court must examine whether the conditions of confinement fall within the "expected parameters" of incarceration). Plaintiff has not alleged any facts indicating that the effects of his inability to shower on April 21, 1994 constituted conditions that gave rise to a protected liberty interest. Plaintiff's due process claim against defendant Busch is therefore dismissed.

### C. The Claims against Defendant Morris

■ Plaintiff claims that defendant Morris violated his constitutional rights by issuing a false disciplinary report against him one day after the pat frisk incident, in retaliation for assaulting defendant Busch. Specifically, plaintiff alleges that defendant Morris deliberately and falsely charged him with a misbehavior report on April 22, 1994, for failing to return an eating utensil, and then subjected him to a three-day restricted diet, pending the disciplinary hearing. Defendants have attached an exhibit to their motion, indicating that Morris mistakenly determined that plaintiff failed to return the utensil, that Morris followed appropriate procedures in placing plaintiff on the restricted diet pending his hearing, and that based on videotaped evidence of the incident that was presented at the disciplinary hearing, plaintiff was found not guilty of the charges. (Docket # 33, Exh. J).

The Second Circuit has held that a correctional officer's filing of unfounded charges does not give rise to a per se constitutional violation under § 1983. *Rodriguez v. Phillips,* 66 F.3d 470, 477 (2d Cir.1995). A prisoner's allegation of false disciplinary charges may, however, state a claim of a substantive

due process violation, when the false charges are allegedly brought in retaliation for the inmate's exercise of a constitutional right. *Freeman v. Rideout,* 808 F.2d 949, 953 (2d Cir.1986), *cert. denied,* 485 U.S. 982, 108 S.Ct. 1273, 99 L.Ed.2d 484 (1988).

It appears, based on a liberal reading of this pro se plaintiff's allegations, *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), that he is attempting to assert a substantive due process claim against defendant Morris for filing the false disciplinary report as a retaliatory measure. Plaintiff's claim of retaliation cannot survive as a matter of law, however, because his allegations lack a significant element—the exercise of a constitutional right against which the correctional officer retaliated. Here, defendant Morris is alleged to have issued the false misbehavior report, in retaliation for plaintiff's assault on defendant Busch, not for his attempts to file grievances against any correctional officers. *Compare Jones v. Coughlin,* 45 F.3d 677, 679–80 (2d Cir.1995) (holding that prisoner has substantive due process right to be free from harassment in retaliation for his filing of grievances). Plaintiff has no constitutional right to assault a correctional officer; therefore, his substantive due process claim against defendant Morris for filing a retaliatory misbehavior report is dismissed.

■ Furthermore, even viewing the allegations broadly and in the light most favorable to the plaintiff, I find that the remaining claim against Morris, an Eighth Amendment violation for placing plaintiff on the three-day restricted diet pending his hearing, also cannot survive as a matter of law.

The cruel and unusual punishment clause of the Eighth Amendment does not prohibit prison officials from restricting an inmate's diet as a punitive measure, as long as the inmate receives nutritionally adequate food that does not present an imminent health risk. *Williams v. Coughlin,* 875 F.Supp. 1004, 1011 (W.D.N.Y.1995) (citing *Robles v. Coughlin,* 725 F.2d 12, 15 (2d Cir.1983)). Here, the dietary restrictions imposed on plaintiff as discipline for the April 22, 1994 missing utensil incident are authorized by regulation and prison directive. 20 NYCRR

§ 304.2(b)(3) (stating that SHU inmates may be placed on a restricted diet when they refuse to obey a direct order to return a utensil at the conclusion of a meal); N.Y.S. DOCS Directive No. 4933, § VII(A)(2)(b), (c). Plaintiff does not allege that he failed to receive a nutritional meal for the three days during which he was on the restricted plan or that he suffered an "imminent health risk" because of the plan.

Defendants' exhibits in support of summary judgment indicate that the dietary restrictions were imposed not in a malicious attempt to cause plaintiff harm, but rather, in a good faith effort to restore or maintain discipline, based on defendant Morris's belief, albeit erroneous, that plaintiff failed to return his utensil. Plaintiff has not presented any contradictory evidence, other than his assertions in the original complaint, that Morris acted with retaliatory motives. Even assuming, however, that defendant Morris had ill-founded motivations for punishing plaintiff by imposing the restricted diet, it cannot be said that his misconduct rose to the level of a constitutional violation. The three-day diet imposed on plaintiff, which is not alleged to have deprived plaintiff of any nutritional or medical need, does not establish a constitutional violation. *See Boddie v. Schnieder,* 105 F.3d 857 (2d Cir.1997); *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir. 1973), *cert. denied sub nom. John v. Johnson,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973). Plaintiff's claims against Morris are therefore dismissed.

### D. Other Defendants

The dismissal of the complaint against defendant Busch moots the allegations that defendants Kozlowski, Elbow, Kelly, and Coughlin condoned or failed to protect plaintiff against Busch's actions. In any event, plaintiff's vague and conclusory allegations against these defendants are legally inadequate to survive summary judgment. As defendants have argued in their motion for summary judgment, plaintiff has failed to demonstrate the personal involvement of any of these remaining defendants in the allegedly unconstitutional actions of defendant Busch, and plaintiff cannot rely on a theory

of respondeat superior to establish the liability of defendants Kelly and Coughlin. *See Johnson v. Glick,* 481 F.2d 1028, 1034 (2d Cir.), *cert. denied sub nom. John v. Johnson,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973). Defendants Kozlowski, Elbow, Kelly and Coughlin are therefore entitled to summary judgment with respect to all claims.[2]

### CONCLUSION

For all of the above reasons, defendants' motion for summary judgment (Docket # 33) is granted in its entirety as to all defendants.

IT IS SO ORDERED.

**2.** The defendants contend that the claims against Kelly, Coughlin, Elbow, Busch, and Kozlowski must be dismissed because these defendants are entitled to qualified immunity. There is no need to address the qualified immunity argument since I have determined that the complaint must be dismissed on the merits.